**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CALVIN HOLMAN, # 193826,** | : | |
| **Plaintiff,** | : | |
| **vs.** | : | **CIVIL ACTION NO. 1:22-0155-JB-N** |
| **R. BUTLER, *et al.*,** | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). After careful review, it is recommended that this action be dismissed, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because Plaintiff's claims are either frivolous or fail to state a plausible claim upon which relief may be granted.

### I. Complaint. (Doc. 1).

The complaint is before the undersigned for screening under 28 U.S.C. § 1915(e)(B)(2) because Plaintiff is proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915. Plaintiff names as Defendants R. Butler, Warden; A. McClain, Warden; D. Wright, Lieutenant; H. Lambert, Correctional Officer; Mr. Murphy[1], Mental Health Staff; and Ms. Smith, Mental Health Staff. (Doc. 1 at 4, 6, PageID.4, 6). Plaintiff identifies the dates of the complained of incidents as December 27, 2021 and March 9, 2022. (Doc. 1 at 3, PageID.3).

---

[1] Mr. Murphy is occasionally referred to by Plaintiff as Mr. Murphee.

According to Plaintiff, on December 27, 2021, he was transferred from Fountain Annex to Fountain Correctional Facility ("Fountain") where he asked Defendant Murphy to place him in a crisis cell because he learned his sister had died on December 26, 2021. (Doc.1 at 6, PageID.6; Doc. 1-2 at 1, PageID.12). Defendant Murphy did the paperwork ordering ADOC (Alabama Department of Corrections) to transfer him to another facility's crisis cell because a crisis cell was not available at Fountain. (Doc. 1-2 at 1, PageID.12). ADOC was unable to transfer him because "they" could not find his medical jacket. (*Id.*). Since his medical jacket could not be located, he was told to have a seat in a chair in the back of the infirmary at about 10:30 a.m. (*Id.*).

At 10:00 p.m., when the shift change occurred and Defendant Murphy had left for the day, his medical jacket still had not been found and he was sitting in the same chair. (*Id.*). Then, the night officer for the infirmary, Defendant Lambert, arrived. (*Id.*). In making her rounds, Defendant Lambert discovered Plaintiff sitting at the back of the infirmary and asked him about his situation. (*Id.*). He explained what had transpired, so she called Defendant Wright, who came to the infirmary. (*Id.* at 1-2, PageID.12-13). She told Wright that she did not have time for this and that she did not feel safe with Plaintiff sitting there and asked if he could place Plaintiff in leg-irons and handcuffs. (*Id.* at 2, PageID.13). Defendant Wright placed leg-irons and handcuffs on Plaintiff, but Defendant Lambert still did not feel safe because Plaintiff still could walk about. (*Id.*). Thus, Defendant Wright secured Plaintiff to the grill-gate with another pair of leg-irons. (*Id.*).

At about 11:30 p.m., Plaintiff requested to use the restroom and to be uncuffed or to have Defendant Wright come to help him. (*Id.*). For fifteen to twenty minutes, Defendant Lambert did not respond to his pleas and finally said that she did not care if he

used the bathroom on himself.  (*Id.*).  Not being able to wait any longer, he urinated on himself.  (*Id.*).  She radioed Defendant Wright to come to the infirmary, which he did.  (*Id.*).  Plaintiff explained to Defendant Wright what had occurred.  (*Id.*).  Defendant Wright laughed at him, said he had "pissy pants," and refused his request for a shower and a change of clothes.  (*Id.*).  Defendant Wright had an inmate runner come and clean up the urine.  (*Id.*).  Defendant Wright then brought a mattress but put it in the middle of the floor where Plaintiff could not reach it.  (*Id.* at 2-3, PageID.13-14).  So, Plaintiff slept in the same chair in his soiled clothes until Lt. Smith came through the infirmary between 6:30 a.m. and 7:30 a.m., at which time he told Lt. Smith of his treatment by Defendants Lambert and Wright the night before.  (*Id.* at 3; PageID.14).  Lt. Smith told the infirmary officer on the morning shift to take Plaintiff so he could shower and called the laundry to send over a clean change of clothes.  (*Id.*).  Then, suddenly, Plaintiff's medical file was located, and he was ready to be transported.  (*Id.*).  Prior to his departure to Kilby Correctional Facility ("Kilby"), Plaintiff told Defendant McClain what transpired.  (*Id.*).  Defendant McClain told Plaintiff to file a full written report when he returned from Kilby.  (*Id.*).

That day, December 28, 2021, Plaintiff was transferred to Kilby, where he made a report of the incident and told Mental Health of the incident each time that he saw them. (*Id.* at 4, PageID.15).  On January 22, 2021, "he decided to put [him]self on a hunger strike" until a full report of the situation had been made.  (*Id.*).  He continued the hunger strike for seven or eight days until he spoke electronically with a mental health officer, who informed him that a report had been made about how Defendants Lambert and Wright treated him.  (*Id.*).  She asked him what else could be done so he would start eating.  (*Id.*).  He requested to be transferred to another facility or to stay at Kilby and to

speak with I & I[2]; she said that she would talk to Kilby's administration to see what she could arrange as well as talk with I & I. (*Id.*). He began eating again, and after three days, he was released into Kilby's population. (*Id.*). He never saw I & I. (*Id.*). Then, on February 15, 2021, he was returned to Fountain, which caused him to think that he was told lies. (*Id.*).

On his first day at Fountain, Plaintiff spoke with Defendant McClain who told him that Defendants Wright and Lambert had been terminated because of their treatment of him. (*Id.*). However, he later learned this statement was a lie because Defendant Wright had been allowed to resign after money was missing from inmates' p.m.o.d. accounts and he encountered Defendant Lambert at the Fountain Annex, where he was housed. (*Id.* at 5, PageID.16). After seeing Defendant Lambert, he began to fear for his life. (*Id.*). On March 7, 2022, because ADOC does not have a grievance system, he turned in a medical grievance complaining about the incident on December 27, 2021, and another medical grievance informing them that he would start a hunger strike immediately, that is, he would not eat, drink, or take medication, until his treatment by Defendants Wright and Lambert was addressed. (*Id*).

"Medical" did not send for him until March 9, 2022, at which time he told them he was suicidal. (*Id.*). Defendant Murphy saw him again and began the paperwork so he could have a crisis cell. (*Id.*). No cell was available at Fountain, so he was sent to Holman Correctional Facility ("Holman"). (*Id.*). He continued his hunger strike until March 13, 2022, when Defendant Murphy came to talk to him to see what could be done for him so

---

[2]     The Court understands I & I to be the Investigation and Intelligence Division of the Alabama Department of Corrections. *Riddle v. Ala. Dep't of Corrs.,* 2022 WL 1316562, at *1 n.2 (S.D. Ala. 2022) (unpublished).

he would start eating again.  (*Id.*).  He told Defendant Murphy that he wanted to talk I & I and to be transferred to another facility.  (*Id.*).  Defendant Murphy said that he would see what he could do about a transfer.  (*Id.*).  Defendant Murphy told him he needed to start eating so he could return to Fountain and address his treatment by Defendants Wright and Lambert and speak with I & I about it.  (*Id.*).  That day he began eating.  (*Id.).*

On March 15, 2022, Defendant Smith, who works at Holman, came to see him and told him that she was going make a full report about the December 27, 2021 incident.  (*Id.*).  But for I & I to see him, he would have to be at Fountain.  (*Id.*).  Then, on March 16, 2022, he was returned to Fountain and has not seen anyone from the I & I as of April 10, 2022, when he signed the complaint.  (*Id.* at 6, PageID.17; Doc. 1 at 9, PageID.9).  Lastly, Plaintiff states that he is a mental health patient, but that "does not exempt [him] from this long outstanding problem [] that goes on behind these Alabama walls of confinement [-] [i]f you are a mental health patient in here [,] they feel as if you are crazy."  (Doc. 1-1 at 6, PageID.17).

For relief, Plaintiff wants $1 million in punitive damages from each Defendant, criminal charges filed against each Defendant, Defendants to be fired, and an injunction to stop the abuse and mistreatment of mental health inmates.  (Doc. 1 at 8-9, pageID.8-9).

## II.  Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Plaintiff is proceeding *in forma pauperis*, the Court is reviewing his complaint (Doc. 1) under 28 U.S.C. § 1915(e)(2)(B).  Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989).  A

claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, *id.* at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist. *Id.*

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (second brackets in original). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949.

Courts liberally construe the pleadings of *pro* se litigants, *Tannenbaum v. U.S.*, 148 F.3d 1262, 1263 (11th Cir. 1998), but "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir.) (citation and quotation marks omitted), *cert. denied*, 574 U.S. 1047 (2014). Factual allegations are treated as true by courts, but conclusory assertions or a recitation of a cause of action's elements are not. *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1951. In addition,

a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863 (1989).

### III.  Discussion.

#### A.  Warden Butler.

Plaintiff claims that Defendant Butler did not call the I & I Division even though she knew of his issue, as shown by Exhibit 1-B, a health care grievance that was referred to the warden, dated March 9, 2022.  (Doc. 1 at 4, PageID.4; Doc. 1-4 at 2, PageID.22).  No more allegations against Defendant Butler were alleged in the complaint.

In a § 1983 action, a plaintiff must show that he has been *deprived of a constitutional or federal right* (jointly, "federal right") by a person acting under color of state law.  *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir. 1992).  This requires Plaintiff to demonstrate that he had a federal right violated by Defendant Butler.  However, Plaintiff's allegations do not implicate or rise to the level of a violation of a federal right.  In fact, the allegations cannot be categorized into a traditional violation.  That is, in examining other areas of the law that may border near this claim, no claim exists based on federal law.  For example, the failure to respond to a grievance does not violate the Constitution. *Wallace v. Hamrick,* 229 F. App' x 827, 829 n.4 (11th Cir. 2007) ("A prisoner is not entitled to grievance procedures under the Constitution.").  A claim against a prison commissioner was found to be frivolous because he did not participate in the illegal conduct and a policy of the department was not involved.  *Kilgo v. Ricks*, 983 F.2d 189, 194 (11th Cir. 1993).  And a right based on a failure to intervene has not been extended beyond an officer using excessive force.  *Jones v. Cannon,* 174 F.3d 1271, 1286 (11th Cir. 1999) (rejecting a

claim against an officer for not stopping an officer who fabricated a confession used in a police report).  Moreover, there is no federal right to an investigation.  *Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) (no right exists to an investigation into the excessive use of force); *Mallory v. Hetzel*, 2016 WL 5030469, at *14 (M.D. Ala. 2016) (failing to investigate an assault by an officer does rise to a constitutional claim); *see also DeShaney v. Winnebago Cnty. Dep't of Social Servs.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) ("Our cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.").  Thus, the undersigned finds that the claim against Defendant Butler is frivolous, as it has no basis in federal law, and therefore, it is due to be dismissed with prejudice.

**B.  Warden McClain.**

Plaintiff alleges that on December 28, 2021, Defendant Smith informed Defendant Warden McClain about the "matter," and Defendant McClain did not call or contact I & I about it.  (Doc. 1 at 5, PageID.5).  Unlike Warden Butler, Defendant McClain's name appears in the general description of Plaintiff's claims.  There, Plaintiff alleges that he told Defendant McClain about the incident before his departure to Kilby, and Defendant McClain said he wanted a full, written report from Plaintiff on his return.  (Doc. 1-2 at 3, PageID.14).  On the first day when Plaintiff returned to Fountain, Defendant McClain told him that Defendants Wright and Lambert had been terminated due to their treatment of him, which he discovered was a lie.  (*Id.* at 4-5, PageID.15-16).  This is the extent of the allegations against Defendant McClain.

These allegations against Defendant McClain do not reflect a violation of a federal right. The fact that Defendant Smith and Plaintiff told Defendant McClain about the incident did not require that Defendant McClain act by contacting I & I. *Vinyard*, 311 F.3d at 1356 (no right exists for an investigation into the use of excessive force). Thus, Defendant McClain's failure to contact I & I does not violate a federal right, nor does the wanting of a report from Plaintiff violate a federal right. Furthermore, the fact that Defendant McClain lied to him about the employment status of Defendants Wright and Lambert does not rise to the level of a constitutional violation. *See Azcona v. Ellis,* 2021 WL 1139843, at *4 (D.N.J. 2021) (finding the warden lied about the number of inmates and staff who had contracted Covid-19, which was troubling, but it was not shown that the warden implemented deficient Covid-19 prevention policies and that the warden was deliberately indifferent to the risks of the policies and, therefore, a claim was not stated). Accordingly, the undersigned finds that the claim against Defendant McClain is frivolous as a matter of law and due to be dismissed with prejudice.

### C. Mr. Murphy.

Plaintiff alleges that Defendant Murphy prepared the paperwork so he could be placed in a crisis cell or be transferred to one. (Doc. 1 at 6, PageID.6). On December 27, 2021, he was taken from the Fountain Annex because of a crisis and was told by Defendant Murphy that "they" could not find his medical file, which caused him to be left at Fountain all night, shackled to the grill-gate. (*Id.*). In the general allegations, Plaintiff asked Defendant Murphy to place him in a crisis cell due to his sister's death. (Doc. 1-2 at 1, PageID.12). Defendant Murphy prepared the paperwork for ADOC to transfer him because a crisis cell was not available at Fountain, but ADOC could not find his medical

jacket to transport him. (*Id.*). With Defendant Murphy having left for the day, Plaintiff spent the night shackled to the grill-gate. (*Id.*). Then, near March 9, 2022, after Plaintiff returned to Fountain, Defendant Murphy prepared paperwork so Plaintiff could have another crisis cell. (*Id.* at 5, PageID.16). Because a cell was not available at Fountain, Plaintiff was transferred to Holman. (*Id.*). When Plaintiff began a hunger strike, Defendant Murphy talked to him to see what could be done so Plaintiff would eat again. (*Id.*). Defendant Murphy said that he would see what he could do about getting Plaintiff transferred. (*Id.*).

Based on Plaintiff's allegations related to Defendant Murphy, Defendant Murphy has been helpful to Plaintiff and responsive to Plaintiff's requests for crisis cells. There are no allegations that Defendant Murphy had any responsibility after he initially authorized Plaintiff's placement in a crisis cell. In fact, Plaintiff's allegations reflect that Defendant Murphy prepared the paperwork so *ADOC* could transfer Plaintiff. (Doc. 1-2 at 1, PageID.12). Plaintiff's allegations do not reflect the Defendant Murphy was *deliberately indifferent* to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Nor do the allegations reflect that Defendant Murphy was *deliberately indifferent* to an unreasonable risk of serious harm to Plaintiff. *Helling v. McKinney,* 509 U.S. 25, 35-36, 113 S.Ct. 2475, 2481-82, 125 L.Ed.2d 22 (1993); *see Chandler v. Crosby*, 379 F.3d 1278, 1297 (11th Cir. 2004) (requiring that both elements of an Eighth Amendment claim must be established). Furthermore, the Constitution does not guarantee that an inmate will be housed in a particular prison, nor does it protect an inmate from transfer to another institution. *Meachum v. Fano*, 427 U.S. 215, 228-29, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976). Considering Plaintiff's

allegations against Defendant Murphy, the Court finds that the claims against him are frivolous and are due to be dismissed with prejudice.

**D.  Ms. Smith.**

Plaintiff alleges that when he was transferred to Holman on a hunger strike, Defendant Smith said that she knew about him being handcuffed and urinating on himself. (Doc. 1 at 7, PageID.7).  She said that she could not do anything about the matter.  (*Id.*). Plaintiff contends that she should have contacted I & I Division.  (*Id.*).

However, Plaintiff's allegations in the general description convey a different picture.  (Doc. 1-2 at 6, PageID.17).  He stated that she said that she would make a full report and make sure I & I would speak to him about his treatment on December 27, 2021, but he would have to return to Fountain for them to speak to him.  (*Id.*).  Even though he was returned to Fountain, he alleges that has not spoken to I & I.  (*Id.*).  As stated above, Plaintiff does not have a federal right to have an investigation.  *Vinyard*, 311 F.3d at 1356.   Accordingly, the claim against Defendant Smith is frivolous and is due to be dismissed with prejudice.   *Cf. Battle v. Cent. State Hosp.*, 898 F.2d 126,130 n.3 (11th Cir. 1990) ("allegations that are contradicted by other allegations in the complaint may also constitute grounds for dismissal" as they meet *Neitzke* 's clearly baseless test for frivolity).

**E.  Defendants Lieutenant Wright and Correctional Officer Lambert.**

**1.  Claims for Denial of Restroom, Shower, and Clean Clothes.**

Plaintiff alleges Defendant Lambert, the infirmary's night officer, arrived for the 10:00 p.m. shift and made her rounds.  (Doc. 1-2 at 2, PageID.12).  In doing so, she discovered Plaintiff in the back of the infirmary sitting in a chair, where he had been since

10:30 a.m.  (*Id.*).  After she heard his situation from him, she called Defendant Wright to come and to place handcuffs and leg-irons on Plaintiff because she did not feel safe with Plaintiff just sitting there.  (*Id.* at 2, PageID.13).  Defendant Wright placed the handcuffs and leg-irons on Plaintiff and then used another set of leg-irons to secure Plaintiff to the grill-gate, as Defendant Lambert said that she did not feel safe with Plaintiff being able to walk around.  (*Id.*).

At 11:30 p.m., Plaintiff asked Defendant Lambert to uncuff him so he could use the restroom.  (*Id.*).  He pleaded with her for fifteen to twenty minutes and asked her to get Defendant Wright or someone else to assist.  (*Id.*)  Finally, she said that she did not care if he urinated on himself.  (*Id.*).  Because he could not hold it any longer, he urinated on himself.  (*Id.*).  Then, she called Defendant Wright.  (*Id.*).  Plaintiff recounted the incident to Defendant Wright.  (*Id.*).  Defendant Wright denied his request for a shower and a change of clothes.  (*Id.*).  Defendant Wright then called a runner to clean up the urine and brought Plaintiff a mattress, which was inaccessible to Plaintiff because the mattress was placed in the middle of the floor.  (*Id.* at 2-3, PageID.13-14).  So, Plaintiff slept in the chair in his soiled clothing.  (*Id.* at 3, PageID.14).  The next morning, December 28, 2021, between the hours of 6:30 a.m. and 7:30 a.m, when Lieutenant Smith came through the infirmary, he told Smith about the incident.  (*Id.*).  Thereupon, Smith allowed him to shower and had the laundry send him a clean set of clothes.  (*Id.*).  No injury was alleged to have occurred to Plaintiff.

The Eighth Amendment of the Constitution provides that "cruel and unusual punishments" should not be inflicted.  U.S. Const. amend. VIII.  "No static test can exist by which courts determine whether conditions of confinement are cruel and unusual, for

the Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (citation and internal quotation marks omitted). Nonetheless, the Constitution does not require that prisons be comfortable, and if conditions are harsh, that is a "part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347, 101 S.Ct. at 2399. It is when the "wanton and unnecessary inflection of pain" occurs that the Eighth Amendment is violated. (*Id.*).

To determine if a violation of the Eighth Amendment has occurred, the Supreme Court developed a two-part test consisting of objective and subjective components. *Wilson v. Seiter*, 501 U.S. 294, 298-304, 111 S.Ct. 2321, 2324-27, 115 L.Ed.2d 271 (1991). The objective component requires that the prisoner show the complained of condition is sufficiently serious to violate the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). To make this showing, an extreme deprivation is required, as such a deprivation denies "the minimal civilized measure of life's necessities." (*Id.*). And this condition must at the very least "pose an unreasonable risk of serious damage to [the inmate's] future health" or safety. *Helling*, 509 U.S. at 35, 113 S.Ct. at 2481.

Next, the subjective component requires that the official has acted with "deliberate indifference" with respect to the condition. *Wilson*, 501 U.S. at 303, 111 S.Ct. at 2327. Negligence does not satisfy this standard because it must be shown that official "acted with a sufficiently culpable state of mind." *Chandler*, 379 F.3d at 1289. To show deliberate indifference, it must be alleged that: "(1) the officer was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the

officer actually drew that inference, (3) the officer disregarded the risk of serious harm, and (4) the officer's conduct amounted to more than gross negligence." *Ireland v. Prummell*, __ F.4th __, 2022 WL 16912130, at *11 (11th Cir. Nov. 14, 2022) (observing the deliberate indifference standard is the same standard that is used for an Eighth Amendment medical claim).

This Circuit "has recognized that the deprivation of basic sanitary conditions can constitute an Eighth Amendment violation." *Brooks v. Warden*, 800 F.3d 1295, 1304 (11th Cir. 2015) (collecting cases, including *DeSapin v. Uphoff, infra*). "An inquiry into conditions of confinement by necessity relies on the particular facts of each situation; the circumstances, nature, and duration of the challenged conditions must be carefully considered." *DeSpain v. Uphoff,* 264 F.3d 965, 974 (10th Cir. 2001) (citation and quotation marks omitted). Though no single factor determines the outcome, "the length of exposure to the conditions is often of prime importance." *Id.*

In *Brooks, supra*, an injured inmate was taken to the hospital where for three days he was held in maximum security restraints with a guard present. Due to medication, he suffered from loose stools and therefore requested the guard to lower his waist chains so he could defecate. The guard refused so he was forced to defecate into his jumpsuit and sit in his own feces for two days, while the guard laughed and taunted him. The guard also refused to let nurses clean the inmate or give him an adult diaper. *Id.* at 1303. In addition to finding that the subjective component was met, the Eleventh Circuit found that the objective component of the Eighth Amendment was met because a substantial risk of serious harm was adequately alleged, "as the health risks of prolonged exposure to human excrement are obvious." *Id.* at 1305.

In the Eleventh Circuit, the *Brooks* decision's reasoning and facts are referred to repeatedly in subsequent decisions where claims of inadequate sanitation are present, especially where exposure to human feces by inmates or detainees is at issue. *See, e.g., Bilal v. Geo Care LLC,* 981 F.3d 903, 909, 916 (11th Cir. 2020) (refusing to give a civilly committed detainee a bathroom break during a 600-mile road trip and thus causing the prisoner to sit in feces for 300 miles violated the Eighth Amendment as well as the detainee's Fourteenth Amendment rights); *Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1343, 1346 (11th Cir. 2016) (finding the plaintiff's cellmates urinated and defecated over him while he tried to sleep next to the toilet and threw feces and urine at him causing him to develop a foot rash were not allegations similar to those conditions in *Brooks* and thus no violation of the Eighth Amendment occurred); *Hamlet v. Martin Corr. Inst.*, 2022 WL 16827438, at *4-*5 (11th Cir. Nov. 9, 2022) (finding the claim failed because the 30-to-40 minute exposure of feces and urine to the diabetic inmate's wound in the shower is not extreme and is different in both degree and kind to the extreme exposure in *Brooks* or because the record did not support a finding that the defendant was subjectively aware of the feces in the wound after the shower).

The Supreme Court in recent years addressed inmate sanitation and hygiene issues. In *Taylor v. Riojas*, ___ U.S. ___, 141 S.Ct. 52, 208 L.Ed.2d 164 (2020), an Eighth Amendment violation was found when the inmate was confined for six days to a cell which had walls, a ceiling, and a floor covered in massive amounts of feces, including the inside of the water faucet. 141 S.Ct. at 53. The inmate did not eat or drink for nearly four days, fearing contamination. *Id.* He was then moved to another cell that was frigidly cold and equipped with only a clogged drain for bodily wastes. *Id.* After twenty-four hours, he

involuntarily relieved himself causing the drain to overflow with raw sewage, which he had to sleep in, naked, because the cell was without a bunk. *Id.* And, previously, in *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), the Court found that guards were not entitled to qualified immunity because the Eighth Amendment was violated when the inmate was handcuffed to a hitching post in the heat of the sun for seven hours without regular water or restroom breaks and subjected to taunting. *Id.* at 738, 122 S.Ct. at 2515.

Considering the foregoing cases in conjunction with the facts alleged by Plaintiff, the undersigned finds that sitting in urine-soaked pants for a period from about 11:45 p.m. to 6:30 a.m. or 7:30 a.m., while not pleasant, was not extreme. Moreover, Plaintiff was not in contact with fecal matter as the *Brooks'* plaintiff, and the duration of sitting in urine-soaked pants was much shorter than the duration for the plaintiff in *Brooks*. And Plaintiff's allegations did not present "an unreasonable risk of serious damage to [Plaintiff's] future health." *Helling*, 509 U.S. at 35, 113 S.Ct. at 2481. Having failed to satisfy the objective component, Plaintiff has failed to state an Eighth Amendment claim upon which relief can be granted. *Rhodes*, 452 U.S. at 352, 101 S.Ct. at 2402 (finding no Eighth Amendment violation after considering only the objective component and finding that it was not satisfied); *Chandler*, 379 F.3d at 1297 (requiring that both elements of an Eighth Amendment claim must be established). As a result, Plaintiff has failed to state a plausible claim against Defendant Correctional Officer Lambert for denying Plaintiff access to the restroom and Defendant Lieutenant Wright for denial of access to a shower and of clean clothes and, therefore, these claims are due to be dismissed without prejudice.

## 2. Claims for Being Restrained.

According to Plaintiff's allegations, he had been housed in Fountain's Annex (Doc. 1 at 6, PageID.6) and was brought to Fountain after he requested a crisis cell. (*Id.*). No crisis cells were available at Fountain, so he was to be transported to another facility with a crisis cell once his medical jacket was found. (Doc. 1-2 at 1, PageID.12). Plaintiff also advised that he is a mental health patient. (*Id.* at 6, PageID.17).

When Defendant Lambert arrived on the 10:00 p.m. shift, she discovered him sitting in a chair that he had been in since 10:00 a.m. (*Id.* at 1, PageID.12). He explained his situation to her. (*Id.*). She called Defendant Wright, and when he came, she explained that she did feel safe with Plaintiff just sitting in the chair. (*Id.*). She asked him to put handcuffs and leg-irons on Plaintiff. (*Id.*). He did, but she expressed, she did not feel safe because Plaintiff could walk around. (*Id.*). So, with another set of leg-irons, he shackled Plaintiff to the grill-gate. (*Id.*). Plaintiff slept sitting in the chair shackled to the grill-gate until 6:30 a.m. or 7:30 a.m. when Lieutenant Smith came through the infirmary and ordered that Plaintiff be released. (*Id.*).

The allegations show that on the evening of December 27, 2021, around 10:00 p.m., Plaintiff was at Fountain where no crisis cell was available, he was away from his assigned institution and bed, and he was a mental health patient who needed a crisis cell. A decision was made to put handcuffs and leg-irons on him and then secure him to grill-gate with another set of leg-irons. The allegations convey that this was for safety of Defendant Lambert. But it could also be said that it was for the safety of other inmates, other guards, and possibly Plaintiff.

As stated above, to state an Eighth Amendment claim the objective and subjective

components must be satisfied. *Wilson,* 501 U.S. at 298-304, 111 S.Ct. at 2324-27. Examining the objective component, Plaintiff alleges that he was restrained with handcuffs and leg-irons and then secured to the grill-gate with leg-irons for a period from approximately 11:45 p.m. until a time between 6:30 a.m. or 7:30 a.m. the following morning. According to the allegations, disorderly behavior was not mentioned as a reason for him being restrained. Rather, a management or operations issue caused him not to be in an assigned location. To address the security issue created for Defendant Lambert and the institution by Plaintiff's presence, Plaintiff was restrained for a relatively short period of time, six hours plus. The type of restraint, as alleged, does not appear to be an exaggerated response. *Cf. Williams v. Burton,* 943 F.2d 1572, 1574-75 (11th Cir.) (finding that no Eighth Amendment violation occurred when placing an enraged segregation inmate in a four-point restraint for twenty-eight-and-half hours with gauze and tape over his mouth while giving deference to prison officials' decision to balance the inmate's Eighth Amendment rights with institutional concerns for the safety of prison staff and inmates), *cert. denied*, 505 U.S. 1208 (1992). Neither was the restraint and its duration extreme, *see Hudson*, 503 U.S. at 9, 112 S.Ct. at 1000, nor did they present "an unreasonable risk of serious damage to his future health." *See Helling*, 509 U.S. at 35, 113 S.Ct. at 2481. Accordingly, Plaintiff has failed to satisfy the objective component of the Eighth Amendment. Therefore, he has failed to state a plausible Eighth Amendment claim against Defendants Lambert and Wright for being restrained and, therefore, these claims are due to be dismissed without prejudice. *Rhodes*, 452 U.S. at 352, 101 S.Ct. at 2402.

Furthermore, the Magistrate Judge in *Sims v. Mashburn,* 25 F.3d 980 (111th Cir.

1994), examined the decision to "strip" an inmate's cell and disconnect the cell's water for a period of not more than a day and half under the foregoing standard for Eighth Amendment claims as well as under the standard for "[w]hen the conduct in question involves any measure taken to prevent a security threat or restore official control[.]" *Id.* at 984.[3] This other "Eighth Amendment inquiry [concerns] 'whether force was applied in a good faith effort to maintain or restore discipline or inflicted maliciously or sadistically for the very purpose of causing harm.'" *Id.* at 984 (quoting *Hudson*, 503 U.S. at 6, 112 S.Ct. at 998 and *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986)). To apply this other standard, the undersigned finds that Plaintiff's allegations show that he was not at the facility to which was assigned, was not in his assigned bed, and was a mental health inmate who was having a crisis and needed to be placed in a crisis cell which was unavailable at Fountain. Defendant Lambert had this information as well. Her request that Plaintiff be placed in handcuffs and leg-irons and then secured to the grill-gate by Defendant Wright because she did not feel safe is a reasonable belief and request. Her request and Defendant Wright's actions were undertaken in good faith and furthered maintaining discipline, order, and the security of the institution. They were not undertaken to cause harm to Plaintiff. Furthermore, "[a]s the Supreme Court has counseled, '[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* at 986 (quoting *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1877, 60

---

[3] In *Sims*, the Eleventh Circuit found that no violation of the Eight Amendment occurred. 25 F.3d at 986.

L.Ed.2d 447 (1979)).  Accordingly, the undersigned finds that under this other standard that the Eighth Amendment was not violated by Defendants Lambert and Wright and that deference should be given to their decisions.  Thus, the restraint claims under this other standard are due to be dismissed with prejudice as frivolous.

## IV.  Conclusion.

Based upon the foregoing reasons, it is recommended that this action be dismissed, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because Plaintiff's claims are either frivolous or fail to state a plausible claim upon which relief may be granted.

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. Gen.LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection,

and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

        **DONE** and **ORDERED** this the 5th day of December 2022.

                                         ***/s/ Katherine P. Nelson***
                                         **UNITED STATES MAGISTRATE JUDGE**